UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

OSMAR LOPEZ JOYA,

                Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
22-CR-249 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On September 5, 2024, Defendant pled guilty the sole count of a Superseding Information, charging him with Transportation of Child Pornography, in violation of 18 U.S.C. § 2252(a)(1), (b)(1). Plea Agreement ¶ 1, ECF No. 42; *see generally* Superseding Information, ECF No. 40. The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c)(2), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is sentenced to sixty (60) months' imprisonment, followed by five (5) years' supervised release, with both the standard and special conditions of supervision, excepting the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d); forfeiture as set forth in the Order of Forfeiture; special assessments in accordance with the Justice for Victims of Trafficking Act of 2015 and the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018; and a $100.00 mandatory special assessment.

**I.    Background**

In late 2020 or early 2021, Osmar Lopez Joya ("Defendant") entered into a sexual relationship with Jane Doe, a minor, while living in Nicaragua. Presentence Investigation Report ("PSR") ¶ 5. At the time, Defendant was in his late forties; Jane Doe was fifteen. *Id.*

Defendant returned to the United States in December 2021. Def. Sent'g Mem. at 7. On January 9, 2022, Jane Doe crossed the southern border into the United States and was apprehended by immigration authorities. PSR ¶ 6. She was released to a refugee shelter, before moving in with her relatives in Wisconsin. *Id.*

On March 30, 2022, Defendant purchased a bus ticket for Jane Doe to travel from Wisconsin to New Jersey. *Id.* ¶ 7. Defendant met Jane Doe in New Jersey and transported her to his cousin's apartment in New York. *Id.* Defendant visited Jane Doe at the apartment. *Id.*

On April 4, 2022, Jane Doe made three 9-1-1 calls from inside the apartment. *Id.* ¶ 8. During the first two calls, Jane Doe was heard crying and telling a man—later identified as Defendant—to stop, leave, and not hurt her. *Id.* During the third call, Jane Doe reported Defendant had threatened to kill her, locked her inside, and taken one of her cell phones. *Id.* When officers arrived, Jane Doe stated Defendant had (1) induced her to come to New York; and (2) had sexual contact with her. *Id.* ¶ 9. Defendant was not arrested that day, and Jane Doe subsequently travelled back to Wisconsin. *Id.* Jane Doe later recanted her statements that Defendant locked her inside and threatened to kill her. *Id.* ¶ 16; Ex. A ("Def. Objections to the PSR"); Def. Sent'g Mem.

On April 17, 2022, Defendant purchased another bus ticket for Jane Doe to travel from Wisconsin to Manhattan. PSR ¶ 11. On April 18, 2022, Jane Doe arrived in New York, where she stayed with Defendant's daughter. *Id.* The same day, Defendant was arrested based on Jane Doe's victim report from April 4. *Id.* The New York County Criminal Court also issued an order of protection prohibiting Defendant from having any contact with Jane Doe. *Id.*

On April 22, 2022, Defendant was released from custody because no indictment had been returned. *Id.* Despite the order of protection, Defendant continued having sexual contact with Jane Doe after his release. *Id.* ¶¶ 14–15, 17.

On May 4, 2022, law enforcement conducting a search of an apartment associated with Defendant found Defendant and Jane Doe inside; Jane Doe was hiding under a bed. *Id.* ¶ 16. Incident to Defendant's arrest, officers seized and searched Defendant's cellphone, discovering numerous sexually explicit photos and videos of Jane Doe and other unidentified young females. *Id.* ¶ 17. The data recovered from the cellphone, when compared with Defendant's travel records, indicated Defendant travelled with the cellphone from Nicaragua to New York in 2021. Gov't

Sent'g Mem. at 3, ECF No. 49. A search of another apartment associated with Defendant uncovered Jane Doe's clothes, wallet, and cell phone. PSR ¶ 18; Addendum to the PSR at 3.

*Procedural History*

On May 5, 2022, the Government brought a Complaint against Defendant for Transportation of a Minor with Intent to Engage in Criminal Sexual Activity. Compl., ECF No. 1. On May 31, 2022, a grand jury returned a two-count Indictment charging Defendant with one count of Mann Act Coercion and Enticement, and one count of Transportation of a Minor with Intent to Engage in Criminal Sexual Activity. Indictment, ECF No. 6.

On September 5, 2024, the Government brought a Superseding Information charging Defendant with one count of Transportation of Child Pornography, in violation of 18 U.S.C. § 2252(a)(1), (b)(1). The same day, Defendant waived Indictment and pled guilty to the sole count of the Superseding Information.

**II.    Legal Standard**

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors

under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

### III. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### 1. *Family and Personal Background*

Defendant was born on January 6, 1974, in Somoto Madriz, Nicaragua. PSR ¶ 45. He and his twin brother were primarily raised by their maternal grandmother. *Id.* ¶ 47. Defendant's mother was a teenager when she gave birth. *Id.* Defendant's father fled to the United States when Defendant and his twin were toddlers to avoid an ongoing war in Nicaragua. *Id.* Defendant's father died in 2021 at age 81. *Id.* ¶ 45. His mother, age 66, lives in Nicaragua and works as a farmer. *Id.*

Growing up, Defendant's family struggled financially, but he felt loved and supported at home. *Id.* ¶ 48. At age 11, Defendant and his brother quit school to work on a coffee farm. *Id.* When Defendant was a teenager, he was conscripted into the Nicaraguan military for three days. *Id.* ¶ 66. He then immigrated to Costa Rica to find work. *Id.* ¶ 49. Defendant remained there until 2006, at which point he moved to the United States. *Id.* In 2019, Defendant traveled back to Nicaragua and stayed there for approximately two years, returning to New York City in December 2021. *Id.* ¶ 49.

In addition to his twin brother, Defendant has nine other siblings. *Id.* ¶ 46. Defendant is married; his wife lives with him in the Bronx and works as a cook. *Id.* ¶ 50. Defendant has a stepdaughter from his current partnership; Defendant's stepdaughter views Defendant as her father. *Id.* Defendant has four other children from prior relationships. *Id.* ¶¶ 51–52. Two of his children live in Virginia and two in Nicaragua. *Id.* Both of Defendant's prior partners live in Nicaragua. *Id.* All of Defendant's relatives are aware of Defendant's involvement in the instant offense and are supportive. *Id.* ¶¶ 45–53.

    2.    *Educational and Employment History*

Defendant attended school until age eleven, at which time he quit school and began working. *Id.* ¶ 62. He is trying to acquire his GED diploma while in custody. *Id.* ¶ 63. Defendant has completed 296 hours of educational coursework at the Metropolitan Detention Center ("MDC"). *Id.* ¶ 54.

While living in Costa Rica, Defendant worked as a forklift operator. *Id.* ¶ 71. Since moving to the United States, Defendant has worked for various contractors and construction companies until he was injured in a work-related accident. *Id.* ¶¶ 70–71. From 2014 to 2020, Defendant collected worker's compensation from that accident. *Id.* ¶ 69. He has not held further employment. *Id.* ¶ 68.

3. *Prior Convictions*

Defendant has no prior convictions. *Id.* ¶¶ 38–40. He was involved in one disciplinary incident at the MDC for being in an unauthorized area. *Id.* ¶ 54.

4. *Physical and Mental Health*

In 2014, while constructing a building in Queens, New York, Defendant fell from scaffolding on the third floor, sustaining serious injuries for which he has received extensive medical treatment, including four surgeries. *Id.* ¶ 57; Exs. B–C to Def. Sent'g Mem.; Def. Sent'g Mem. at 5. Defendant was initially diagnosed with traumatic brain injury, post-concussion syndrome, and neuropsychological impairment. PSR ¶ 60; Addendum to the PSR at 5. As a result of his injuries, Defendant still experiences head pain, caused by leaking fluid in his ear; hearing loss; loss of vision; and memory loss. PSR ¶ 57. He now scores below the first percentile in information processing, verbal functioning, working memory, and motor skills. Def. Sent'g Mem. at 5. Between his accident and arrest for the instant offense, Defendant attended hundreds of appointments with a cognitive therapist. *Id.*

Defendant also suffers from high blood pressure and cholesterol, for which he takes medication. *Id.* While in custody at the MDC, Defendant has requested hearing aids and medication for his memory-related health problems, but he has not to date received these items. *Id.* Defendant has been to the hospital multiple times while incarcerated. *Id.* ¶ 58.

5.  *Substance Abuse*

Defendant reports he has not used drugs and does not recall the last time he consumed alcohol. *Id.* ¶ 61.

6.  *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct, which involved both pursuing and maintaining a sexual relationship with a fifteen-year-old girl, who submitted a victim impact statement detailing the ongoing trauma she experiences from Defendant's actions. PSR ¶¶ 4–18; Sealed Addendum to the PSR at 3. Defendant also stored pornographic material of the girl on his phone and transported that material when he travelled from Nicaragua to the United States. PSR ¶¶ 4–18. The Court's sentence will deter others from engaging in similar conduct and justly punish Defendant for his crimes. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

7

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to one count of Transportation of Child Pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(1). Plea Agreement ¶ 1, ECF No. 42; *see generally* Superseding Information, ECF No. 40.

Defendant faces a statutory minimum term of five years' imprisonment and a maximum term of twenty years' imprisonment. 18 U.S.C. § 2252(b)(1). He also faces a statutory minimum term of five years' supervised release and no maximum term. 18 U.S.C. § 3583(k); U.S.S.G. §5D1.2(b)(2), (c). If a condition of supervised release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(b)(2), (e). Defendant is ineligible for probation because he is being sentenced at the same time to a term of imprisonment for the same or a different offense. 18 U.S.C. § 3561(a)(3).

Defendant faces numerous other penalties: a maximum fine of $250,000.00; a special assessment of $5,000.00, pursuant to the Justice for Victims of Trafficking Act; an assessment of no more than $35,000.00, pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act; forfeiture in accordance with the signed Order of Forfeiture; removal; and compliance with sex offender notification and registration requirements. 18 U.S.C. §§ 2259(a), 3014(a), 3571(b), 4042(c); 21 U.S.C. § 853(p); Plea Agreement ¶ 12. The Court is also required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

Defendant pled guilty to one count of Transportation of Child Pornography, in violation of 18 U.S.C. § 2252(a)(1) and (b)(1). Plea Agreement ¶ 1. The applicable Guideline for Transportation of Child Pornography is U.S.S.G. §2G2.2, which provides a base offense level of 22. Two levels are added under U.S.S.G. §2G2.2(b)(6) because Defendant used a cellphone for the transportation of child pornography. Two levels are added under U.S.S.G. §2G2.2(b)(7)(A) because the offense involved between 10 and 150 images (that is, 76 images).

Probation and the Government contend five levels are added under U.S.S.G. §2G2.2(b)(5) because Defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." Defense counsel objects to this enhancement. Applying the enhancement results in a total adjusted offense level of 31. All parties agree three levels are reduced for Defendant's timely acceptance of responsibility under U.S.S.G. §3E1.1(a)–(b). PSR ¶¶ 35–36.

Probation recommends a top-of-the-Guidelines sentence of ninety-seven (97) months' imprisonment; to be followed by five years' supervised release; and a $100.00 mandatory special assessment. Revised Prob. Sent'g Rec. at 1. The Government and defense counsel recommend the mandatory minimum sentence of sixty (60) months' imprisonment. Gov't Sent'g Mem. at 1; Def. Sent'g Mem. at 1.

The Court appreciates the sentencing arguments raised by all parties and has considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Probation directs the Court to the policy considerations in U.S.S.G. §5K2.21, stating Defendant's participation in additional conduct not captured in the Guidelines calculations for the instant offense—helping individuals enter the United States in exchange for money—could constitute grounds for an upward departure. PSR ¶ 105; *see* U.S.S.G. §5K2.21. Finding no other policy statements on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As explained, restitution is mandatory in this case. 18 U.S.C. § 2259(b)(2). The victim's specific losses are unknown at this time. PSR ¶ 93. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within ninety (90) days after this sentencing to determine the specific amounts owed to Defendant's victim(s).

**IV.     Conclusion**

For the reasons set forth above, Defendant is sentenced to sixty (60) months' imprisonment, to be followed by five (5) years' supervised release, with both the standard and special conditions of supervision, excepting the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d); forfeiture, as set forth in the Order of Forfeiture; special assessments in accordance with the Justice for Victims of Trafficking Act of 2015 and the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018; and a $100.00 mandatory special assessment. This sentence is sufficient but not greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay.

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and Addendum thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

**SO ORDERED.**

**s/WFK**
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 8, 2025
       Brooklyn, New York

11